**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Southwest Fair Housing Council,<br><br>                    Plaintiff,<br><br>v.<br><br>WG Chandler Villas SH LLC, et al.,<br><br>                    Defendants. | No. CV-18-00210-TUC-RM<br><br>**ORDER** |

Plaintiff Southwest Fair Housing Council initiated this lawsuit on April 20, 2018 (Doc. 1) and filed its First Amended Complaint ("FAC") on June 26, 2018 (Doc. 8). In the FAC, Plaintiff sues the following Defendants: WG Chandler Villas SH, LLC d/b/a Atria Chandler Villas ("Chandler Villas"); WG Campana Del Rio SH, LLC d/b/a/ Atria Campana Del Rio ("Campana Del Rio"); WG Scottsdale, LLC d/b/a Atria Sierra Pointe ("Atria Sierra Pointe"); Brookdale Senior Living Communities, Inc. d/b/a/ Brookdale Arrowhead Ranch and Brookdale Freedom Plaza ("Brookdale"); Immanuel Caring Ministries, Inc and CopperSands, Inc. d/b/a Immanuel Campus of Care ("Immanuel and CopperSands"); La Posada at Park Centre, Inc. ("La Posada"); MorningStar Senior Management, LLC and MS Arrowhead, LLC d/b/a MorningStar at Arrowhead ("the MorningStar Defendants"); Solterra of Arizona, LLC ("Solterra"); The Ensign Group, Inc. and Saguaro Senior Living, Inc. d/b/a Sherwood Village Assisted Living and Memory Care ("the Sherwood Village Defendants"); SRG Management, LLC d/b/a Silver Springs and Village at Ocotillo ("SRG"); Sunrise Senior Living Development, Inc., Sunrise Senior

Living Management, Inc., and Sunrise Senior Living Service, Inc., d/b/a Sunrise at River Road ("the Sunrise Defendants"); and Watermark Retirement Communities, Inc. d/b/a Fountains at La Cholla ("Watermark").

Pending before the Court are Defendants' Motions to Sever. (Docs. 90-94, 98, 100-105.)[1] Plaintiff filed a single Response to all of the Motions (Doc. 106), and Defendants filed Replies (Docs. 107-113, 115-118).[2]

## I.    Background

Plaintiff alleges that Defendants own, lease, and/or operate nursing-home facilities located in and around the Tucson and Phoenix areas, and that Defendants "discriminate against elderly deaf residents and prospective residents by failing and/or refusing to provide qualified American Sign Language interpreters or other auxiliary aids and services to ensure effective communication." (Doc. 8 at ¶¶ 6, 15-44.) According to the FAC, Plaintiff utilized "fair housing testers" in 2016-2018 to determine whether Defendants would supply an American Sign Language interpreter for a deaf resident if requested or necessary. (*Id.* at ¶ 5, 47, 49-80.) Defendants' employees allegedly informed the testers that Defendants would not provide ASL interpreters and that the purported relatives could provide their own interpreters or communicate with staff in writing. (*Id.* at ¶ 5.) Plaintiff asserts claims under the Fair Housing Act, 42 U.S.C. § 3602, *et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*; Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116; and the Arizona Fair Housing Act, A.R.S. § 41-1491, *et seq.* (*Id.* at ¶¶ 7, 81-138.) Plaintiff seeks declaratory, injunctive, and equitable relief; compensatory

---

[1] Specifically, Solterra, Watermark, and Brookdale filed nearly identical Motions to Sever. (Docs. 90-92.) The MorningStar Defendants and Immanuel and CopperSands filed unique Motions to Sever. (Docs. 94, 100.) SRG joined in Watermark's Motion to Sever. (Doc. 93.) The Sunrise Defendants, the Sherwood Village Defendants, Atria Sierra Pointe, Campana Del Rio, Chandler Villas, and La Posada joined in the other Defendants' Motions to Sever, with additional arguments. (Docs. 98, 101-105.)
[2] Specifically, Solterra, Watermark, and Brookdale filed nearly identical Replies. (Docs. 108-110). SRG and the MorningStar Defendants filed unique Replies. (Docs. 107, 112.) The Sunrise Defendants, the Sherwood Village Defendants, Atria Sierra Pointe, Campana Del Rio, Chandler Villas, and La Posada joined in the other Defendants' Replies. (Docs. 111, 113, 115-118.)

and punitive damages; and costs, interest, and attorneys' fees. (*Id.* at ¶ 7; *see also id.* at 27-29.)

## II.     Defendants' Motions to Sever and Motions to Transfer Venue

Defendants argue that Plaintiff has, for its own convenience, impermissibly lumped fourteen separate lawsuits into one. According to Defendants, Plaintiff cannot satisfy the requirements for permissive joinder under Rule 20(a) of the Federal Rules of Civil Procedure because Plaintiff's testers had different communications, on different dates, in different locations, with employees of 14 different facilities owned and/or operated by 17 different entities, each with their own separate, distinct policies and procedures. Defendants further argue that the witnesses and documentary evidence will differ for each Defendant and that severance will facilitate settlement, promote judicial economy, reduce what would otherwise be prohibitively expensive discovery and litigation costs, prevent jury confusion, and avoid prejudice. Finally, some of the Maricopa County Defendants request a transfer of venue, arguing that the claims brought against them have been brought in the incorrect division of the District of Arizona.

Plaintiff argues in response that its claims are logically related and rely on common questions of law and fact, because they all arise under the same statutes and involve the same test used to identify an identical harm. Plaintiff further argues that joinder is neither unfair nor prejudicial to Defendants because the evidence and legal theories will overlap and a single lawsuit will serve judicial economy. Plaintiff also argues that the jury will be capable of sorting the allegations against each Defendant, and that any jury confusion can be remedied by a limiting instruction. In a footnote, Plaintiff argues that a transfer of venue is improper because some of the Defendants' conduct occurred in Pima County, and the Local Rules of Civil Procedure specify that, "[i]n cases where the cause of action has arisen in more than one county, the plaintiff may elect any of the divisions appropriate to those counties for filing and trial purposes." (Doc. 106 at 9 n.8 (quoting LRCiv. 5.1(a)).)

. . . .

. . . .

**III. Legal Standard**

Rule 20 of the Federal Rules of Civil Procedure permits joinder of multiple defendants in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). If these requirements are not both satisfied, a district court may sever misjoined parties "as long as no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); *see also* Fed. R. Civ. P. 21 (authorizing courts to add or drop parties or sever claims). Furthermore, even when the requirements of Rule 20 are satisfied, "a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)). If a likelihood of prejudice and jury confusion outweigh any likely gains in judicial efficiency, severance is appropriate. *See id.* at 1296-97.

**IV. Discussion**

**A. Motions to Sever**

Plaintiff has failed to satisfy the requirements for permissive joinder under Rule 20(a)(2). Although Plaintiff alleges that it tested each Defendant in a similar manner and that each Defendant failed the test in a similar manner, these allegations are insufficient to show that Plaintiff's claims arise out of "the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). Plaintiff's testers interacted with employees of 14 different facilities owned and/or operated by 17 different entities. Multiple interactions with employees of a single facility—or multiple interactions with employees of multiple facilities owned by the same entity and operating under the same policies and procedures—arguably could be viewed as a series of transactions or occurrences for purposes of Rule 20(a)(2)(A). But separate interactions over the course of

- 4 -

approximately two years with different, wholly unrelated facilities cannot.

Furthermore, although Plaintiff alleges that Defendants violated the same laws in a similar way, Plaintiff's ability to establish liability against any one Defendant will have no bearing on its ability to establish liability against any other Defendant. Plaintiff's reliance on this Court's decision in *Harter v. Carondelet Health Network*, No. CV 15-343-TUC-RM, is misplaced; in that case, multiple plaintiffs alleged that they were injured by the same policy of a single defendant. In contrast, here, there is no common policy or procedure at issue, as Defendants are unrelated entities. Establishing liability will require individualized inquiries into each Defendant's conduct, policies, and procedures.[3]

Even if Plaintiff could satisfy the requirements of Rule 20(a)(2), severance would nevertheless be appropriate based on considerations of judicial economy and the likelihood of prejudice and jury confusion. Continued joinder would make scheduling and case management needlessly difficult and cumbersome, thereby undermining judicial efficiency.[4] And while Plaintiff has identified no substantial right that would be prejudiced by severance, Defendants have shown that continued joinder would be both unfair and prejudicial to them. Absent severance, Defendants' litigation costs would be exponentially increased, as each Defendant's attorneys would—in compliance with their ethical duties of representation—be forced to sift through reams of unrelated filings and discovery and sit through hours of unrelated witness depositions and trial proceedings. Furthermore, absent severance, the eventual trial in this case would include a long parade of mini-trials focused on each Defendant, leaving the jurors with the unenviable task of sorting through which evidence relates to which Defendant. The potential for prejudice and jury confusion in such a scenario is extremely high.

Because Defendants have been improperly joined under Rule 20(a)(2) and continued joinder would undermine judicial efficiency and create a high likelihood of

---

[3] Furthermore, Plaintiff's claims may not apply equally to all Defendants, as some Defendants deny receiving federal funding and/or engaging in the practice of healthcare. In addition, the reasonable-accommodation determination may vary by Defendant.

[4] In addition, absent severance, discovery would be needlessly complicated by the fact that many if not all of the Defendants appear to be competitors who would understandably be reluctant to disclose sensitive, proprietary information to one another.

prejudice and jury confusion, the Court will grant Defendants' Motions to Sever. However, as noted above, Plaintiff alleges that all Defendants violated the same laws in a similar way, and thus similar legal issues will likely arise with respect to each Defendant. Accordingly, although the general practice when granting severance is to dismiss without prejudice all but the first misjoined party, *see Coughlin*, 130 F.3d at 1350-52, the Court finds that in the present case, the interests of judicial economy weigh in favor of directing the Clerk of Court to sever this case into individualized actions against each Defendant but to assign each new action to the undersigned on the grounds that each new action will likely call for a determination of substantially the same questions of law. *See* LRCiv 42.1.

**B.     Motions to Transfer**

Some of the Maricopa County Defendants request that the Court transfer the cases against them to the Phoenix division of the District of Arizona. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see also id.* at § 1404(b). However, because Plaintiff's claims against each Defendant are likely to call for a determination of substantially the same questions of law, the Court finds that the interests of justice weigh in favor of assigning each individualized action to a single judge. Accordingly, the Court will deny Defendants' Motions to Transfer. Defendants may re-file the motions if future circumstances demonstrate that assignment to the Tucson division of the District of Arizona is causing substantial inconvenience to parties and/or witnesses.

**IT IS ORDERED** that Defendants' Motions to Sever (Docs. 90, 91, 92, 93, 94, 98, 100, 101, 102, 103, 104, 105) are **granted**.

**IT IS FURTHER ORDERED** that this matter is **severed into individual actions, one for each of the following Defendants**:

- WG Chandler Villas SH, LLC d/b/a Atria Chandler Villas
- WG Campana Del Rio SH, LLC d/b/a/ Atria Campana Del Rio
- WG Scottsdale, LLC d/b/a Atria Sierra Pointe

- Brookdale Senior Living Communities, Inc. d/b/a/ Brookdale Arrowhead Ranch and Brookdale Freedom Plaza
- Immanuel Caring Ministries, Inc and CopperSands, Inc. d/b/a Immanuel Campus of Care
- La Posada at Park Centre, Inc.
- MorningStar Senior Management, LLC and MS Arrowhead, LLC d/b/a MorningStar at Arrowhead
- Solterra of Arizona, LLC
- The Ensign Group, Inc. and Saguaro Senior Living, Inc. d/b/a Sherwood Village Assisted Living and Memory Care
- SRG Management, LLC d/b/a Silver Springs and Village at Ocotillo
- Sunrise Senior Living Development, Inc., Sunrise Senior Living Management, Inc., and Sunrise Senior Living Service, Inc., d/b/a Sunrise at River Road;
- Watermark Retirement Communities, Inc. d/b/a Fountains at La Cholla.

**IT IS FURTHER ORDERED** that the Clerk of Court **shall assign** a new case number to each newly created individual action and, pursuant to LRCiv. 42.1, **shall assign** each newly created individual action to the Honorable Rosemary Márquez. The Clerk of Court shall file a copy of the First Amended Complaint (Doc. 8) and this Order in each newly created individual actions.

**IT IS FURTHER ORDERED** that the Maricopa County Defendants' Motions to Transfer (Doc. 100, 102, 104) are **denied without prejudice**.

Dated this 26th day of March, 2019.

Honorable Rosemary Márquez
United States District Judge